Filed JUL 2011 Caroline Circuit Court

# AFFIDAVIT FOR SEARCH WARRANT

Commonwealth of Virginia VA. CODE 19.2-54

**The undersigned Applicant states under oath:**

**1. A search is requested in relation to an offense substantially described as follows:**

Manufacturing, selling, giving, distributing or possessing with intent to manufacture, sell, give or distribute a controlled substance or an imitation controlled substance. 18.2-248, Code of Virginia.

[ ] CONTINUED ON ATTACHED SHEET

**2. The place, person, or thing to be searched is described as follows:**

The entire property located at 128 Yorktown Drive, Ruther Glen, VA, 22546. The search will include the entire residence, any vehicles, any outbuildings, the curtilage of the residence and all contents located within said items. The residence is described as being a single story brick structure with green shutters. The residence is located at the corner of Burr Drive and Yorktown Drive. The front of the home faces Burr Drive and the driveway is entered into from Burr Drive. There are typically two older model white cars which appear to be broken down parked to the right of the driveway.

[ ] CONTINUED ON ATTACHED SHEET

**3. The things or persons to be searched for are described as follows:**

Any items of evidentiary value related to Eric McCarter and his alleged involvement in the illegal distribution of cocaine. These items will include but not be limited to; cocaine, records of illegal narcotics transactions, money ledgers, U.S. currency used by the Caroline County Sheriff's Office during a previous controlled purchase of cocaine, large sums of U.S. currency, firearms, receipts of illegal drug transactions, banking or financial records, cellular telephone assigned the number (804) 572-7466, weight scales, plastic baggies, cellophane wrappings and cellular telephone bills.

[ ] CONTINUED ON AN ATTACHED SHEET

(OVER)

CASE NO.

**AFFIDAVIT FOR SEARCH WARRANT**

**APPLICANT:**

T.L. Nutter
NAME

Sergeant
TITLE (IF ANY)

Caroline County Sheriff's Office
ADDRESS

Certified to Clerk of Caroline Circuit Court on
CITY OR COUNTY

7/21/2011
DATE

Magistrate — TITLE
[signature] — SIGNATURE

Original Delivered to Clerk of ______ Circuit Court on
CITY OR COUNTY

______ by the undersigned
DATE

TITLE ______ SIGNATURE ______

Complete only if different from above:

Copy Delivered [ ] in person [ ] certified mail [✓] electronically transmitted facsimile

To Clerk of Caroline, Circuit Court

City or County of Issuance on

Date: 7/24/2011 Title: Magistrate

Signature: [signature]

07/24/2011 23:32 FAX 804 537 6315 HANOVER MAGISTRATE 002/006

EXHIBIT 1

**4. The material facts constituting probable cause that the search should be made are:**

Your Affiant has been assigned to Narcotics Investigations for more than seven years. During these seven years Your Affiant has participated in thousands of controlled purchases of illegal drugs and led numerous drug investigations. Your Affiant has attended hundreds of hours of training addressing the methods and techniques used by illegal drug distributors and has been sworn with the DEA as part of a large multi-state drug investigation. Your Affiant has conducted hundreds of interviews with illegal drug distributors and users in reference to methods used by illegal drug distributors to evade law enforcement efforts. Your Affiant also commonly teaches law enforcement recruits and/or law enforcement personnel on the topic of illegal drug distribution/possession. Based on training and experiences it is known to Your Affiant that illegal drug distributors commonly keep illegal drugs, records of illegal narcotics transactions, money ledgers, large sums of U.S. currency, firearms, receipts of illegal drug transactions, banking or financial records, weight scales, plastic baggies, cellophane wrappings and cellular telephone bills in their homes or hidden in other areas on their property.

[☒ CONTINUED ON ATTACHED SHEET]

**5. The object, thing, or person searched for constitutes evidence of the commission of such offense.**

6. ☒ **I have personal knowledge of the facts set forth in this affidavit OR**

7. ☒ **I was advised of the facts set forth in this affidavit, in whole or in part, by an informer. This informer's credibility or the reliability of the information may be determined from the following facts:**

The confidential source utilized for this investigation has provided information to law enforcement against his/her own penal interest. This confidential source has provided information which has been verified by independent Police investigation. This source has been a documented source of information for Your Affiant for more than 3 years. This source has provided information which has assisted Your Affiant in previous illegal drug investigations. This source is an admitted addict of illegal drugs and is currently not using illegal drugs and under medical care for his/her addiction. This source is familiar with numerous illegal drug distributors and is familiar with the techniques and/or methods used by illegal drug dealers.

[☐ CONTINUED ON ATTACHED SHEET]

**The statements above are true and accurate to the best of my knowledge and belief.**

SERGEANT
TITLE OF APPLICANT (IF ANY)

[signature]
APPLICANT

**Subscribed and sworn to before me this day.**

7/21/2011 @ 3:12 PM
DATE AND TIME

[signature]
☐ CLERK ☒ MAGISTRATE ☐ JUDGE

FORM DC-338 Reverse 7/08

07/24/2011 23:33 FAX 804 537 6315 HANOVER MAGISTRATE ☑003/006

# ATTACHMENT A

**4. The material facts constituting probable cause that the search should be made are:** (continued)

Your Affiant has been familiar with Eric McCarter and his involvement in illegal drug distribution since before being assigned to Narcotics Investigations. In 2003 Your Affiant assisted VA State Police Drug Task Force Members with the execution of a search warrant at a room in the Days Inn Hotel in Ruther Glen, VA. The hotel room was McCarter's residence at that time. Your Affiant found cocaine and a firearm during the search of the hotel room. McCarter was later charged and convicted of distributing cocaine as a result of the search warrant.

In 2008 Your Affiant participated in a separate investigation of Eric McCarter. During this investigation, members of the Caroline County Sheriff's Office conducted controlled purchases of cocaine from McCarter using a confidential source. In April of 2009 McCarter was found guilty of two counts of distributing cocaine as a result of this investigation.

Within the past seventy two hours, Your Affiant participated in a controlled purchase of cocaine from Eric McCarter which occurred at McCarter's residence at 128 Yorktown Drive, Ruther Glen, VA, 22546. During this controlled purchase members of the Caroline County Sheriff's Office Narcotics Investigations Division met with a confidential source at a prearranged location where the confidential source and his/her vehicle were searched prior to the purchase and the source was provided with traceable money to make the purchase with. The confidential source advised that he/she had previously spoken with McCarter and that McCarter said to come to his house for the purpose of purchasing cocaine. The confidential source reported talking with McCarter by the telephone number (804) 572-7466. The confidential source also showed Your Affiant text messages which had been sent to and from McCarter in reference to illegal drug activity.

Following the searches, the confidential source drove to the residence to be searched while being followed by Your Affiant, Investigator Blasiol and Investigator Reece. The confidential source went into McCarter's home and talked with McCarter. The confidential source then left the home, met Your Affiant and provided cocaine which the confidential source stated was purchased from McCarter while in the residence.

VA Division of Motor Vehicles records show McCarter's residence to be 128 Yorktown Drive, Ruther Glen, VA. Surveillance shows McCarter, McCarter's girlfriend and his 18 year old daughter to be at 128 Yorktown Drive on a daily basis.

Based on McCarter's previous history of illegal drug distribution and a recent controlled purchase of cocaine made from McCarter, Your Affiant believes this Affidavit to be sufficient probable cause to grant a search warrant for McCarter's residence (128 Yorktown Drive, Ruther Glen, VA, 22546).

APPLICANT

MAGISTRATE

7/21/2011 @3:12
DATE AND TIME

VIRGINIA:

CIRCUIT COURT OF CAROLINE COUNTY

ERIC MCCARTER,

Plaintiff,

v. Law No. CL140458

TRAVIS NUTTER,

Defendant.

**AFFIDAVIT OF TRAVIS NUTTER**

Comes now Travis Nutter, and for his affidavit states as follows:

1. My name is Travis Nutter and I am a Lieutenant with the Caroline County Sheriff's Office.

2. I sought to obtain the search warrant at issue in this case.

3. I provided an Affidavit for Search Warrant used to obtain a search warrant to search Eric McCarter's ("McCarter") residence.

4. I had personal knowledge of much of the information provided in the Affidavit for Search Warrant. Prior to seeking issuance of the search warrant, I had personal knowledge of the investigation involving the controlled purchase of cocaine mentioned in the affidavit. I parked at a park close to McCarter's residence while the confidential informant ("CI") went to McCarter's residence for the purpose of purchasing cocaine. I drove past McCarter's residence twice while the CI was inside. The CI was wearing a wire when he went into the residence and I listened to the conversations between the CI and McCarter as it was taking place. I knew that the CI came out of the residence and provided cocaine that he purchased from McCarter to Detectives Blaisol and Reece.

EXHIBIT
2

5. Prior to the controlled purchase, I spoke with the CI to arrange a meeting with him to have his outstanding arrest warrants served. Detective Blaisol and I met with the CI on July 7, 2011 to obtain information and serve the warrants. During this meeting, the CI told Detective Blaisol and I that he was seeing a doctor for his drug addiction and that the doctor prescribed suboxone, which made the CI sick if he took pills or used heroin. The CI showed me a copy of his prescription. I also did not observe anything to make me suspect that the CI was currently using drugs when I met with him. During the meeting, the CI also provided information against his own penal interest when he admitted to committing prescription fraud for which he had charges pending. He also admitted he had a probation violation pending for which he could receive substantial jail time.

6. Prior to the controlled purchase, the CI showed me text messages between himself and McCarter in which the CI attempted to arrange the deal between himself and McCarter which concluded with the controlled purchase. Before that time, I had reviewed text messages between McCarter and a second CI. The second CI asked if McCarter had any cocaine to buy and McCarter responded by saying he did not have any, but to check back on Friday because he would have some then. The second CI did not want to participate in the controlled purchase. I determined we should use the first CI to arrange for and participate in the controlled purchase.

7. Prior to the controlled purchase and prior to seeking the search warrant, I had personal knowledge that the CI had been used as an informant for another investigator in the Caroline County Sheriff's Department for more than three years prior to my request for the search warrant at issue. I was personally involved in investigations using the CI during those three years and knew that he provided us with a lot of credible information. The CI admitted he had been used as an informant before, as evidenced by the Cooperating Individual Agreement

signed by the CI and attached as Exhibit B, on which the CI indicated that he had been documented in the past as a confidential source of information for the Caroline County Sheriff's Office. The CI had been placed on inactive status. Because of his inactive status, and because Detective Blaisol had never used the CI before, the CI was asked to sign a new agreement on July 18, 2011.

Further this deponent saith not.

Travis Nutter

COMMONWEALTH OF VIRGINIA
~~CITY~~/COUNTY OF Caroline

The foregoing instrument was acknowledged under oath before me this 13th day of March, 2015 by Travis Nutter.

Notary Registration No.: 291217

My Commission Expires: 10 / 31 / 2016

Notary Public

TANISHA M. WIMMER
NOTARY PUBLIC
MY COMMISSION NUMBER 291217
COMMONWEALTH OF VIRGINIA

information through text messages?

A No, ma'am.

Q No? Okay. And Mr. Cauthorne, had he made any buys prior to that date?

A No, he had not. This was his first one.

Q Okay. So he's untested at this point; is that right?

A Tested?

Q He's untested at this point as a CI?

A This was his first buy.

Q He had not previously made any buys?

A No, he did not.

Q He had not previously testified?

A Nope.

Q Not aware that he previously served as a CI anywhere else?

A Not -- actually, he had served as a CI for Caroline before. Under my handling he had not done any buys. Sergeant Nutter had signed him up prior to that.

Exhibit 3

Q So that meant that you had a fairly substantial amount of contact with Mr. Cauthorne as well; is that right?

A Yes, ma'am.

Q Because Mr. Cauthorne was being handled, right, by Investigator Blasiol?

A Yes, ma'am.

Q Okay. And how many times prior to that had Mr. Cauthorne engaged in buys?

A I don't know the exact number. Several.

Q Prior to that day?

A Or not -- well, to that day? I don't know. I don't remember if that was his first buy or not. I know he started -- he actually started working with us just giving us information for a while and -- but I don't remember the first day he made a buy. I know it was in -- it was in July, but I don't know the exact date. That could have been the first day that we started working him.

Q Okay. Were you familiar with the

Exhibit 4

FRANKLIN CAUTHORNE, a witness, being called for examination by the Commonwealth, first being duly sworn, testified as follows:

DIRECT EXAMINATION

BY MR. SPENCER:

Q You are Franklin Conway Cauthorne?

A Yes, sir.

Q You go by Frankie?

A Yeah.

Q And you've been convicted of petit larceny twice, possession of schedule one or two drug, possession of heroin, obtain drug by fraud, two felony violations of probation and possession of a firearm by a convicted felon?

A Yes, sir.

Q And on some of those convictions you received a suspended sentence?

A Yes, sir.

Q And based on having a suspended sentence of five years that you were in danger of

Exhibit 5

having imposed on you, did you agree to go to work for the Caroline County Sheriff's Office as a confidential informant on July -- in July of last year?

A Yes, sir.

Q Okay. And I'm going to direct your attention specifically to July 18, 2011. Before I ask you that, though, do you know an Eric McCarter?

A Yes, sir.

Q Do you see him in the courtroom?

A Yes, sir.

Q And can you point him out, please?

A (Indicating).

MR. SPENCER: Let the record reflect he's identified the defendant, Your Honor.

THE COURT: All right.

Q On July 18, 2011, did you see Eric McCarter that day?

A Yes, sir.

Q Okay. And before you saw him, did

Exhibit 5

Q Okay. When did you begin being a confidential informant?

A June 18th or -- 18th of 2011.

Q Okay. Of what month?

A I believe it was July. June or July. I'm not positive.

Q Was that the first time you talked to the police?

A No.

Q How long have you been talking to the police before that?

A I think -- I caught a driving charge, I'm not sure exactly how long, but I've been talking to them prior to that.

Q But that's not why you started talking to them about being a confidential informant, though, is it?

A Yes, it is.

Q It's not because of your probation violation?

A That was in Hanover. They couldn't

Filed Caroline Circuit Court

**VIRGINIA:**

**IN THE CIRCUIT COURT FOR THE COUNTY OF CAROLINE**

**COMMONWEALTH OF VIRGINIA**

**v.** **Case Nos. CR12-106 & 107**

**ERIC MCCARTER**

**DISCOVERY REGARDING CONFIDENTIAL INFORMANT**

COMES NOW the Commonwealth, by counsel, and provides the following information about the confidential informant (the "CI") in this matter.

1. The CI is Franklin Conway Cauthorne.

2. The CI's convictions of crimes of moral turpitude

| Offense | Court | Date of conviction |
|---|---|---|
| Petit larceny | Caroline JDRCt | 5/12/2009 |
| Petit larceny | Caroline JDRCt | 5/12/2009 |
| Possess Schedule I/II drug | Caroline Circuit | 8/19/2009 |
| Possess heroin | Hanover Circuit | 12/22/2010 |
| Obtain drug by fraud | Hanover Circuit | 12/12/2011 |
| Felony violation of probation | Caroline Circuit | 4/25/2012 |
| Possession of firearm by a felon | Caroline Circuit | 8/28/2012 |
| Felony violation of probation | Hanover Circuit | 9/19/2012 |

3. The CI's history as a confidential informant

In the Caroline Circuit Court on August 19, 2009, the CI received a suspended sentence of five years on his conviction of Possession of a Schedule I/I drug. On April 27, 2011, the CI was served with a Show Cause order from the Caroline Circuit Court, ordering that he appear on July 27, 2011, and show cause why the suspension of his five-year sentence should not be revoked.

Nine days before his scheduled first appearance on the Show Cause, the CI signed up on July 18, 2011, with the Caroline County Sheriff's Office (the "CCSO") to work as a confidential informant, in an effort to avoid having the suspension of his five-year sentence revoked. At the time he signed up as a confidential informant, the CI admitted to being a drug user but stated that he was currently clean and had been for a couple of months.

what was the show cause for? - if not Drugs if was drugs how could he be clean for months His Ro Drug tests are relevant

Exhibit 7

On the day he signed up as a confidential informant, the CI made the controlled buy from Eric McCarter, the defendant in this case.

Subsequently, the CI made controlled buys of drugs for the CCSO as follows:

(a) on August 16, 2011, from a person who was later indicted for the distribution, but whose charge was dismissed on June 26, 2012; and

(b) on August 25 and 31, 2011, from a person who was later indicted for the two distributions, and whose charges are scheduled to be tried in January 2013; and

(c) on September 20, 2011, from a person who was later charged by warrant for the distribution and who confessed to making the distribution but entered into the Caroline County Recovery Community Program (the "CCRCP") in the hopes that his charge would be dismissed.

Because the CI was working as a confidential informant, the Commonwealth agreed to continue his Show Cause hearing, as follows: from July 27, 2011, to September 28, 2011, to November 2, 2011, to January 18, 2012.

On December 27, 2011, the CI was charged in Caroline County with abduction, domestic assault, possession of a firearm by a convicted felon, and driving while suspended. Based on these new charges, the CCSO terminated the CI as a confidential informant on December 30, 2011.

The CI was not paid any money for his work as a confidential informant, but he was occasionally paid money to reimburse him for gas expenditures and for cell phone minutes to be able to maintain contact with the CCSO.

The information available to the Commonwealth is that the CI never provided the CCSO with any misleading information.

4. <u>The resolution of the CI's charges in Caroline County in 2012 and his drug and treatment history</u>

Other than what has already been stated, the Commonwealth is unaware of the CI's drug and treatment history prior to January 18, 2012.

On January 18, 2012, the CI began participating voluntarily in the CCRCP. For his first six weeks in the CCRCP, he passed all drug screens.

In the Caroline General District Court on February 3, 2012, the CI waived preliminary hearing on his charge of possession of a firearm by a convicted felon, and he was found guilty of driving while suspended, which conviction he appealed to the Circuit Court.

On March 9, 2012, the Caroline Juvenile and Domestic Relations District Court (the "Caroline JDR Court") ordered pursuant to an agreement by the Commonwealth that the CI's charges of abduction and domestic assault would be continued for one year for him to complete the CCRCP and would be dismissed if he satisfactorily completed that program.

On March 10, 2012, the CI was charged again with domestic assault. On March 13, 2012, he tested positive for opiates.

On March 29, 2012, the CI appeared in the Caroline Circuit Court on his pending Show Cause and to be arraigned on his indicted charge of possession of a firearm by a convicted felon and his appealed charge of driving while suspended. In court, the CI appeared to be under the influence of some self-administered intoxicant; he was tested and found to be positive for heroin, cocaine, benzodiazepine, and THC. In addition to revoking his bond, the Circuit Court found him in contempt and sentenced him to ten days in jail.

Based on the CI's new charges, the Caroline JDR Court issued Show Cause orders against the CI on his charges for the first domestic assault and the abduction and on April 17, 2012, sentenced him to 14 days in jail on each Show Cause. Those charges are scheduled for a review date in the Caroline JDR Court on January 29, 2013.

On April 25, 2012, the defendant pled guilty on the Show Cause in the Caroline Circuit Court; his previously suspended sentence was revoked and re-suspended on the same conditions and on the further condition that he successfully complete the CCRCP after his release from incarceration.

On May 15, 2012, the CI pled no contest in the Caroline JDR Court to the second domestic assault charge and was sentenced to 12 months in jail, with all 12 months suspended on condition that he be of good behavior for three years.

On August 28, 2012, the CI pled guilty in the Caroline Circuit Court to driving while suspended and received a $200.00 fine and to possession of a firearm by a convicted felon and was sentenced to three years in prison with one year suspended on certain conditions, including that he be of good behavior for five years and that he successfully complete the CCRCP after his release from incarceration.

Based on the CI's new convictions in Caroline County, the Hanover Circuit Court revoked one year of his suspended time there on September 19, 2012.

Respectfully submitted,

Anthony G. Spencer
Commonwealth's Attorney

CERTIFICATE

I hereby certify that a true and exact copy of this Discovery Regarding Confidential Informant was hand-delivered to counsel for the defendant, Erin Ranney, Esquire, on this 3rd day of October, 2012.

Anthony G. Spencer

cross - Blasiol

Q (Interjecting) An officer from a surrounding jurisdiction that could provide that capacity as an undercover agent?

A We did, yes.

Q Okay. Did you make use of that person in this buy?

A No, we did not.

Q Okay. Now, how did it come to be that on July 18th you all made the decision to try to make the transaction that day?

A Frankie had been in contact with Mr. McCarter, Frankie called me and said that Mr. McCarter was, they call it good, meaning that he was in possession of narcotics he was intending to sell.

Q Were you able to confirm that information in any way?

A Yes.

Q How did you confirm that information?

A Frankie went to the house and bought the narcotics.

Q Were you able to confirm that

Exhibit 8

information through text messages?

A No, ma'am.

Q No? Okay. And Mr. Cauthorne, had he made any buys prior to that date?

A No, he had not. This was his first one.

Q Okay. So he's untested at this point; is that right?

A Tested?

Q He's untested at this point as a CI?

A This was his first buy.

Q He had not previously made any buys?

A No, he did not.

Q He had not previously testified?

A Nope.

Q Not aware that he previously served as a CI anywhere else?

A Not -- actually, he had served as a CI for Caroline before. Under my handling he had not done any buys. Sergeant Nutter had signed him up prior to that.

Exhibit 8

